HERSHEY et al. v. BLAKESLEY.

*Circuit Court, D. Connecticut. February 22, 1888.)*

PATENTS FOR INVENTIONS—PATENTABILITY—PRIOR USE.
> Letters patent No. 218,300, issued August 5, 1879, to William Mills and Christian H. Hershey, for an improvement in hair-crimpers, the article consisting "essentially of a strip of soft, non-elastic metal, preferably flat, covered with a fibrous coating, cemented thereto, so that when cut into proper lengths for use the ends will not fray out," etc., are void, the evidence showing prior public use of the patented article, by the defendant, for more than two years before the application for the patent.

In Equity. On bill for injunction.
*Joshua Pusey*, for plaintiffs.
*George D. Seymour* and *Charles E. Mitchell*, for defendant.

SHIPMAN, J. This is a bill in equity founded upon the alleged infringement of letters patent No. 218,300, dated August 5, 1879, to William Mills and Christian H. Hershey, for improvement in hair-crimpers.

The article consists, in the language of the patent, "essentially of a strip of soft, non-elastic metal, preferably flat, covered with a fibrous coating, cemented thereto, so that when cut into proper lengths for use the ends will not fray out, but remain the same into whatever number of pieces the crimper may be divided." The claims are as follows:

"1. A hair-crimper consisting of the non-elastic metallic core, C, and braided covering, A, said covering, A, being cemented to said core, C, throughout its entire length, substantially as described.

2. The process of manufacturing hair-crimpers by first flattening soft metal wire between rollers, then covering it with a braided fibrous coating, attached thereto by means of an adhesive substance, and afterwards dividing the material into suitable lengths for hair-crimpers, substantially as herein described."

The infringing article consists of a brass wire within two strips of paper, the whole covered with a braided covering, the two strips of paper having been passed through a cementing mixture before entering the braider.

The suit in equity of *Hershey et al.* v. *Howard M. Giles and others*, in the circuit court for the Southern district of New York, which was decided by Judge WALLACE on April 10, 1885, involved this patent, and the same infringement. In that case the patentability of the invention, and

the infringement of the patent, were not controverted, the defense of prior public use, by the present defendant, of the patented article for more than two years before the application for a patent being the only defense which was relied upon. In that case, as in this, the defendant introduced evidence in regard to the manufacture by Blakesley, in the year 1876, in Bristol, Connecticut, of two kinds of hair-crimpers,—one by what is now called "the double cover process," by which a metallic core, covered first with cotton braid, was passed through a bath of dextrine, and was then covered with a silk braid; the other by what is now called "the bare metal process," by which a core of bare metal, having been passed through a bath of dextrine, was then covered with a single coat of braiding. Of the use by Blakesley of the double cover process there is no question, but Judge WALLACE was of opinion, from an inspection of the exhibits, that there was no appreciable adhesion between the covering and the core, and that the adhesion of the strands together, and not their adhesion to the core, was the object which Blakesley had in view. Upon this trial anticipation of the invention by the use of this process was not pressed. Two witnesses only, Blakesley and Wright, testified, in the New York case, that the former made crimpers by the "bare metal process." This theory, Judge WALLACE thought, was refuted "by the omission of Blakesley and Wright to mention the fact in their affidavits used to oppose a motion for preliminary injunction in this case. These affidavits purport to give a full history of the manufacture of crimpers by Blakesley, and the omission to state what was so important, if true, is significant. No explanation has been given of the failure to state the facts."

The only question which I shall consider is, whether the use of this process by Blakesley has been now shown, beyond a fair doubt, by the additional witnesses, and by all the testimony. When the motion for preliminary injunction was made in 1884, in the New York case, Wright, the predecessor of Blakesley in the crimper business, remembered the use of the bare metal process in 1876, and told Blakesley and the defendants' counsel of it; but Blakesley did not remember it with any clearness, and could not testify to it. The affidavits were, therefore, prepared by counsel, omitting all mention of this method, which intervened, for a very short period, between the "Wright process" and the double cover process. The Wright process consisted in covering a strip of metal with a braid, and then gumming with dextrine the long braided strip at the end of each crimper. When the depositions were taken, Blakesley had called to mind, or thought he had, the use of the bare metal process, and both he and Wright testified accordingly; but no explanation was given of the omission to tell this fact in their affidavits. The defendants' case, in the New York suit, rested upon the double cover process, which counsel apparently thought was a sufficient anticipation of the patent in suit. In this case, Robinson, Lewis, Hubbell, Sikes, Mitchell, Mrs. Gowdy, Carrington, Blakesley, and Wright,—the first five being new witnesses,—testify to the use of the bare metal process by Blakesley in 1876. And all except Lewis, Hubbell, and Mitchell testify to the use of the two processes. I disregard the testimony of Hubbell and

Mitchell, because, although they were at work in Blakesley's shop continuously,—the former during the year 1876, and the latter from the early part of 1876 to the fall of 1877,—they remember nothing about the double cover process, which, confessedly, was used before their eyes nearly all the time. The accuracy of a memory cannot, in my opinion, be relied upon, which remembers nothing of the ordinary, habitual process which was used continuously in their presence after the early part of May, 1876. I disregard, also, the testimony of Carrington, because he was a witness in the New York case, and said at that time nothing of the bare metal process, although he thinks that he then recollected it. I think that he did not then recollect it, because he would naturally have mentioned the circumstance, either upon examination or cross-examination, if it had been in his mind. This leaves the testimony of Robinson, Lewis. Sikes, Mrs. Gowdy, Blakesley, and Wright. Considering the testimony of Blakesley as not entitled to full weight, by reason of his interest, and of his non-recollection of a fact in his own business which took place in 1876, I am impressed with the truthfulness of Wright, Robinson, Lewis, and Mrs. Gowdy. In the testimony of Sikes I see nothing to criticise, but it is general in its character, and is not accompanied by a statement of circumstances which show why the process was noticed and remembered. The history which is detailed is this: After Blakesley commenced the crimper business, which seems to have been in the early part of 1876, he manufactured, for a short time, by the Wright process. He then, in the month of April and early part of May, used the bare metal process for a short time, not exceeding two weeks, perhaps not so long, and by this process manufactured and sold some fifty "great gross" of boxes. Each "great gross" contains 144 small boxes, of a dozen crimpers each. On account of the liability of the silk covering to be stained by the dextrine, the double cover process was thereafter used until the fall of 1879, when it was suspended, and resumed in the early part of 1880, and continued until the fall of that year, when Blakesley failed in business.

I am fully aware of the ease with which honest witnesses can persuade themselves that they remember some bygone circumstance which they are ingeniously induced to think that they remember; but, in this case, I do not perceive any manipulation of these witnesses, and I think that their testimony was not manufactured, and they were not mistaken. There is nothing improbable, either by reason of the state of the art, or of the character of the improvement, in the history which is given. The invention, after the Wright process had been used, was a very natural one.

The bill is dismissed.